UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-332-FDW

| KAYIE SHAUNE WRIGHT, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| HUBERT CORPENING, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Also pending are Plaintiff's "Motion for Permanent Restraining Order and Preventive Relief/Injunction," (Doc. No. 3), and Plaintiff's "Notice," (Doc. No. 8), in which he seeks transfer to another prison and a trial date. Plaintiff is proceeding *in forma pauperis*. (Doc. No. 7).

**I.  BACKGROUND**

*Pro se* Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983 while incarcerated at the Marion Correctional Institution.[1] He names as Defendants the following Marion C.I. employees: Unit Manager T. Boysworth, Nurse FNU Connely, Superintendent H. Corpening, Program Director D. Cotherin, Officer Davis, Assistant Unit Manager Hamilton, and Assistant Superintendent D. Watkins.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff was promoted to regular population on January 12, 2018 and is entitled to enjoy the privileges associated with regular population ("RPOP") including unrestrained movements, meals in the

---
[1] Plaintiff filed a similar § 1983 suit that is pending in case number 1:18-cv-90-FDW.

1

dining hall, purchase of items from canteen, recreation in the gym, weekly visitation, and phone calls.

Plaintiff was given an "adhesion contract" when he was placed in the restrictive Rehabilitation Diversion Unit ("R.D.U.") program. He has been placed in solitary confinement and deprived of his RPOP privileges without due process. Defendants Boysworth, Hamilton and Cotherin are violating due process by denying Plaintiff a food package without an opportunity to appeal even though he is eligible to order food packages. (Doc. No. 1 at 3). Plaintiff is exposed to indefinite solitary confinement and Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin deprive him of his 13th Amendment rights. The RDU program restricts Plaintiff to be reviewed by a DCA (director's classification authority) nor FCC (Facility Classification Committee). They violate (RHCP) restrictive housing for control purposes by not providing that after a maximum of 90 days in solitary. This program is duress and cruel and unusual punishment, punished without due process, and involuntary servitude.

Plaintiff sincerely believes in the Rastafarian faith and he is authorized to attend Rastafarian group worship services in the Marion C.I. Religious Service Center. He was denied a religious vegan diet on October 9, 2018 due to "chain of command," (Doc. No. 1 at 4), and Sergeant Kinzer's refusal to inform kitchen management to replace a missing special diet bag.

On October 8, 2018, Officer Davis was escorting Plaintiff back to his assigned cell when Davis assaulted and battered Plaintiff by punching him in the back of the head with heavy force, stating "you fucking snitch that's for the lawsuit and earlier." (Doc. No. 1 at 7). Defendant Connley refused to assist Plaintiff after being notified of a use of force report on October 11, 2018 that required emergency medical attention.

Defendant Hamilton and Boysworth are violating the Unit Management chapter of NCDPS

Policy & Procedure by placing Plaintiff in an environment where he is in fear after intimidation, reprisals, and unsafe conditions with staffing on the unit. Plaintiff has notified them of intimidation, reprisal and unsafe conditions on multiple occasions.

Defendants Corpening, Watkins and Cotherin have the authority to issue disciplinary actions for violating NCDPS Policy & Procedure and staff misconduct but failed to do so. Their failure to act makes them liable under bystander liability.

Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin violated Plaintiff's privacy rights and continue to defame his character by publishing false information. They defamed his character by "associating Plaintiff with RPOP and the activities that comes with RPOP in which Plaintiff has no connection to" and associating him with false charges and infractions. (Doc. No. 1 at 9).

As relief, Plaintiff seeks declaratory judgment, injunctive relief (immediate transfer to Alexander C.I. and closure of RDU), compensatory damages, punitive damages, nominal damages, jury trial, costs, sentence reduction, any relief the court deems just, proper, and equitable.

## II.     STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as

true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Parties**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption

4

and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against at least one individual who is not named as a defendant in the caption as required by Rule 10(a). This failure renders those allegations nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). The allegations directed at individuals not named as Defendants are therefore dismissed without prejudice.

**(2)** **Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was

objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

**(A)** **Conditions of Confinement**

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that he was promoted to regular population on January 12, 2018 and is entitled to enjoy the privileges associated with regular population including unrestrained movements, meals in the dining hall, purchase of items from canteen, recreation in the gym, weekly visitation, and phone calls. He complains that he is being forced to participate in Marion C.I.'s RDU program and, as a result, he has lost the privileges of regular population, has been exposed to harsher conditions of confinement such as solitary confinement, and has been deprived of a food package.

The conditions that Plaintiff has described are not sufficiently serious to amount to a constitutional deprivation and he has failed to adequately allege that prison officials imposed these conditions with deliberate indifference to Plaintiff's health and safety. Therefore, Plaintiff's claims alleging unconstitutional conditions of confinement will be dismissed.

**(B)** **Excessive Force**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1 (1992). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); see also Jarvis v. Securitas Sec. Servs. USA, 2012 WL 527597 (D. Md. Feb. 16, 2012).

Plaintiff alleges that, on October 8, 2018, Officer Davis was escorting Plaintiff back to his

assigned cell when Davis assaulted and battered Plaintiff by punching him in the back of the head with heavy force, stating "you fucking snitch that's for the lawsuit and earlier." (Doc. No. 1 at 7). These allegations that Defendant Davis punched Plaintiff are sufficient to proceed. However, any suggestion that the other Defendants are liable as bystanders is too vague and conclusory to proceed. See generally Fed. R. Civ. P. 8(a)(2) (short and plain statement is required); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim).

**(C)** **Medical**

As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs, including psychological needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that Defendant Connley refused to assist Plaintiff after being notified of a

8

use of force report on October 11, 2018 that required emergency medical attention. This claim is minimally sufficient to proceed.

**(3)     Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(A)     Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson, 468 U.S. at 517; Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are

adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

It appears that Plaintiff is alleging that Defendants Boysworth, Hamilton, and Cotherin denied him a food package under RDU rules without due process. This claim sufficiently alleges a deprivation that was the result of prison policy rather than an unauthorized act. It will therefore be permitted to proceed.

### (B) Classification

A plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

Plaintiff appears to allege that Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin placed him in the RDU Program against his will and without due process, and that he is being kept in solitary confinement for more than 90 days without the regular benefits of RPOP classification to which he is entitled, without due process. This claim minimally alleges an atypical and significant hardship that was imposed without due process and will be permitted to proceed at this time.

### (4) Retaliation

10

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civil Libs. Un. of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

Liberally construing the Complaint, it appears that Plaintiff is alleging that Defendant Davis punched him in retaliation for exercising free speech by filing a lawsuit. This sufficiently states a claim for retaliation and will be permitted to proceed.

**(C)** **Discipline**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces

11

the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Plaintiff contends that Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin associated Plaintiff with false charges and infractions. These allegations are too vague and conclusory to make out a due process claim with regards to prison discipline. See generally Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02. Therefore, to the extent

Plaintiff attempted to raise a due process claim with regards to any disciplinary charges, this claim will be dismissed.

**(5)** **Supervisory Liability**

A superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, but he may be found liable under section 1983 on the basis of his own acts or omissions. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell, 436 U.S. at 694). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff alleges that Defendants Corpening, Watkins and Cotherin have the authority to issue disciplinary actions for violating NCDPS Policy & Procedure and staff misconduct but failed to do so. He also alleges that Unit Managers Hamilton and Boysworth are violating the Unit

Management chapter of NCDPS Policy & Procedure by placing Plaintiff in an environment where he is in fear after intimidation, reprisals, and unsafe conditions with staffing on the unit. Plaintiff has notified them of intimidation, reprisal and unsafe conditions on multiple occasions. These allegations are too vague and conclusory to state a claim against any of these Defendants. See generally Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02.

**(6) Privacy**

There is no "right of privacy" found in any specific guarantee of the Constitution, however the Supreme Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. Paul v. Davis, 424 U.S. 693, 712–13 (1976). These zones include the right to suppress evidence seized in the course of an unreasonable search, or matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. Id. at 713 The right to privacy includes an "individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). However, this privacy interest must be weighed against the public interest in rehabilitation and in the security of prisons. Taylor v. Best, 746 F.2d 220, 224 (4th Cir. 1984). Further, the courts have continually held that prisoners have only limited rights to privacy. See, e.g., Bell v. Wolfish, 441 U.S. 520 (1979) (upholding constitutionality of double-bunking and body cavity searches); Hudson, 468 U.S. at 517 (prisoners have no reasonable expectations of privacy in their cell).

Plaintiff contends that Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin violated his privacy rights and defamed his character by publishing false information about him about false charges and infractions, and by "associating Plaintiff with RPOP and the activities that comes with RPOP in which Plaintiff has no connection to." (Doc. No. 1 at 9). These allegations

14

are too vague and conclusory to state a claim against any of these Defendants. See generally Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02.

**(7)** **Sentence reduction**

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under the Civil Rights act, § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004). "Habeas corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release from confinement," Griffin v. Baltimore Police Dep't, 804 F.3d 692, 694–95 (4th Cir. 2015) (citing Preiser v. Rodriguez, 411 U.S. 475, 487–90 (1973)), and "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," Muhammad, 540 U.S. at 750. Some cases are "hybrids," where a prisoner seeks damages, which are unavailable through a habeas action, but on allegations that either imply the invalidity of an underlying conviction or of a particular ground for denying relief short of serving the maximum term of confinement. Id. To address this situation, the Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994), that:

> to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus….

Id. at 485.

For Heck to bar a § 1983 claim, (1) "a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence," Heck, 512 U.S. at 487, and (2), the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practically sought

habeas relief while in custody, Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015).

Plaintiff seeks reduction of his criminal sentence but fails to allege that his conviction and sentence have been reversed on appeal, expunged, or declared invalid. Plaintiff's claim that his criminal sentence should be reduced is not cognizable in this action and will be dismissed.[2]

**(8)** **Preliminary Injunction**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is a remedy that is "granted only sparingly and in limited circumstances." MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. DiBiase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter, 555 U.S. at 20).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. See Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting Martinez v. Matthews, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. Id. (citing Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir.

---

[2] Plaintiff is cautioned that he should diligently pursue any available remedies because they may be governed by timeliness and procedural requirements.

1980)). Further, it is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor, 34 F.3d at 268; see Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Plaintiff has filed two Motions seeking temporary restraining order/preliminary injunction and there is also such a request in his Complaint. He alleges that he is being harassed and that his grievances are not being processed. He requests immediate transfer to another prison, closure of the RDU program at Marion C.I., and a trial date.

Plaintiff's conclusory allegations have failed to demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Therefore, his request for preliminary injunctive relief will be denied.

**(9)** **Supplemental Jurisdiction**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

Plaintiff appears to allege that the Defendants' actions violated the North Carolina constitution's with regards to due process and cruel and unusual punishment. As these claims appear to be related to federal claims that have passed initial review, the Court will exercise supplemental jurisdiction over Plaintiff's North Carolina claims at this time.

V.   **CONCLUSION**

For the foregoing reasons, the Complaint is sufficient to proceed against Defendant Davis for excessive force and retaliation, against Defendant Connley for deliberate indifference to a serious medical need, against Defendants Boysworth, Hamilton, and Cotherin for deprivation of property without due process, and against Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin for classification in solitary confinement and RDU without due process. The Court will exercise supplemental jurisdiction over Plaintiff's North Carolina claims at this time. The remaining claims are dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's requests for preliminary injunctive relief are denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint passes initial review on Plaintiff's claims of excessive force and retaliation against Defendant Davis, deliberate indifference to a serious medical need Defendant Connley, deprivation of property without due process against Defendants Boysworth, Hamilton, and Cotherin, and for classification in solitary confinement and RDU without due process against Defendants Hamilton, Boysworth, Corpening, Watkins and Cotherin. The Court will exercise supplemental jurisdiction over Plaintiff's North Carolina claims at this time.

2. The remaining claims are dismissed without prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).

3. Plaintiff's "Motion for Permanent Restraining Order and Preventive Relief/Injunction," (Doc. No. 3), Plaintiff's "Notice," (Doc. No. 8), in which Plaintiff seeks preliminary injunctive relief, and the request for preliminary injunctive relief in the Complaint are **DENIED**.

4. **IT IS FURTHER ORDERED THAT** the Clerk is directed to commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Boysworth, Connley, Cotherin, Corpening, Davis, Hamilton,** and **Watkins** who are current or former employees of NCDPS.

Signed: March 25, 2019

Frank D. Whitney
Chief United States District Judge